# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JOSEPH JAMES GALINO,

        **Plaintiff,**

    **-vs-**                                  **Case No. 6:08-cv-182-Orl-GJK**

COMMISSIONER OF SOCIAL SECURITY,

        **Defendant.**

_____

## MEMORANDUM OF DECISION

Plaintiff Joseph James Galino ("Galino") appeals to the district court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits and supplemental security income payments ("SSI"). *See* Doc. No. 1. For the reasons set forth below, it is ordered that the Commissioner's decision is **AFFIRMED**.

## I.    <u>BACKGROUND</u>

Galino was born on August 24, 1962, and his education concluded in the tenth grade. R. 68, 616. Galino's past employment experience includes working as an armed security guard, doing lamination work for a boat manufacturer, working in a recycling plant, working as a painter. R. 137-49, 616-18. Galino last worked for brief periods in 2003 and 2004 as a security guard. R. 616-17.[1] Galino alleges an onset of disability as of May 15, 2001. R. 68. On April 25, 2002, Galino filed a prior application disability benefits and SSI. R. 73. The prior application

---

[1] In her August 24, 2007, decision, the Administrative Law Judge found that Galino had not engaged in any substantial gainful activity since the alleged onset date. R. 17.

was denied initially and no appeal or request for reconsideration was filed. R. 15, 60. On January 26, 2005, Galino filed the present application for disability benefits and SSI alleging disability due to an enlarged aorta, high blood pressure, liver disease, pancreatitis, and memory loss. R. 68, 126. Galino remained insured through March 31, 2006. R. 133. Therefore, Galino must establish a disability prior March 31, 2006.

On July 31, 2006, Galino's application was denied initially and, on November 21, 2006, the application was denied again upon reconsideration. R. 46-56. On August 17, 2006, Galino requested a hearing before an Administrative Law Judge ("ALJ") and, on July 18, 2007, a hearing was held before the Honorable Philemina M. Jones. R. 53, 611-37.

At the hearing, Galino was represented by a non-attorney Rick Gach. R. 611. Galino and Vocational Expert ("VE") Natalie Tessari testified at the hearing. R. 611-37. Galino testified to the following in pertinent part:

- He is impaired and unable to work due to: vomiting; extreme drowsiness due to medication side effects (Phenergan); immense abdominal pain; diarrhea; intense back and neck pain; groin pain; dizziness; fainting; irregular and uncontrollable bowels; liver disease; hernias; pancreatitis with a renal cyst; and H. pylori ulcers;

- Due to his impairments, he spent approximately one year (2002-2003) lying on the couch;

- Dr. Canada treated him for liver disease, pancreatitis, and H. pylori ulcers;

- He takes Nexium for stomach aliments;

- He is currently treating with his primary care physician Dr. Rasul, Dr. Baumann, and Dr. Datta;

- He began treating with Dr. Rasul prior to March 31, 2006, but he was unable to see Drs. Baumann and Datta prior to March 31, 2006, because he did not have any insurance and was unable to pay for treatment;

- He has not received any vocational rehabilitation;

- During the relevant time period (May 15, 2001 through March 31, 2006): he was able to help with household chores and help with the children in 2002-2003; he was able to take care of his personal hygienic needs until 2004, but can no longer bathe without assistance;

- During the relevant time period: he was unable to sit in an office chair because "[i]t felt like [his insides] were just on fire," and, without screaming in pain, he could sit in an office chair for five to ten minutes; he could sit and stand for a total of one hour a day; he could occasionally lift twenty pounds; and he could frequently lift a gallon of milk;

- During the relevant time period: he had extreme problems, including pain, with reaching above shoulder level and would become paralyzed for about four hours if attempted; he had difficulty grasping objects, but could do it; he has been unable to perform fine manipulations since he was a teenager; he has difficulty using his hands because they burn, itch, and do not work right;

- During the relevant time period, he could walk a block and a half until pain in his knees, neck, and spine would prevent him from continuing;

- During the relevant time period, he experienced difficulty with attention, concentration, focusing, and remembering things; and

- He testified that since the relevant time period his condition has become "[h]orribly worse," and he currently spends twelve to eighteen days a month in bed or on the couch.

R. 611-632. The VE's testimony will be discussed below.

On August, 2007, the ALJ issued an unfavorable opinion finding Galino not disabled. R. 15-25. In her decision, the ALJ made the following pertinent findings:

1. Galino met the disability insured status requirements of the Social Security Act through March 31, 2006;

2. Galino has not engaged in substantial gainful activity since May 15, 2001;

3. Galino has the following severe combination of impairments: a cognitive disorder; a dysthymic disorder; anxiety; herniated nucleus pulposus of the cervical spine ("HNP") and a lower back sprain/strain;

4. Galino does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;

5. After careful consideration of the entire record, the undersigned finds that Galino has the residual functional capacity ("RFC") to perform medium work, with restrictions. Galino can lift or carry 50 pounds occasionally and 25 pounds frequently, stand or walk for about 6 hours in and 8-hour workday, and sit for about 6 hours in an 8-hour workday, with normal breaks. Galino has no limitation of pushing or pulling with his upper or lower extremities. Galino has no postural limitations, except of only occasionally squatting, climbing, kneeling, and crawling. Galino has no manipulative, visual, communicative, or environmental limitations. Galino can perform only simply, routine, repetitive tasks;

6. Galino is unable to perform any past relevant work;

7. Galino was born on August 24, 1962, and was 38 years old [on the alleged disability onset date], which is defined as a younger individual 18-49;

8. Galino has a limited education and is able to communicate in English;

9. Transferability of job skills is not material to the determination of disability due to the claimant's age;

10. Considering the Galino's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform; and

11. Galino has not been under a "disability," as defined in the Social Security Act, from May 15, 2001, through the date of this decision.

R. 17-25.  In reaching her decision, the ALJ made the following findings regarding the opinions

of Drs. Baumann and Rasul:

> In May 2007, a medical source statement completed by Dr.
> Baumann indicated that the claimant could lift or carry only 10
> pounds occasionally, and sit, stand, or walk for only 2 hours in an
> 8 hour workday, with alternating sitting and standing at will.  In
> July 2007, a medical source statement completed by Dr. Rasul also
> indicated that the claimant could only lift or carry less than 10
> pounds rarely, and sit, stand, or walk for less than 2 hours in an 8-
> hour workday, with alternating sitting and standing ever 5-10
> minutes.   However, <u>little weight is afforded to these opinions
> because the assessed limitations are not supported by the objective
> medical records; in addition, Dr. Rasul is not a treating physician</u>.
> In September 2006, x-rays of the lumbar spine were unremarkable.
> In October 2006, Dr. Baumann also noted the claimant's report
> that, since his lower back injury in 1996, he was doing better,
> except until 2005 when he started having a burning pain to his
> legs.   In March 2007, MRI scans of the lumbar spine further
> revealed no abnormality, and MRI scans of the cervical spine
> revealed only some mild disk protrusion at the right C6-C7 level,
> and only some left foraminal disease at the C3-C4 level.   In
> addition, in June 2006, Dr. Datta opined that the claimant's mild
> disk protrusion at the C6-C7 level could cause some neck and right
> arm symptoms, "but really there is no explanation for his multiple
> unusual symptoms."

R. 22 (emphasis added).   Regarding the RFC opinion of the non-examining state agency

consultant, Dr. Bigsby, the ALJ made the following finding:

> [The ALJ] has considered the opinion expressed by . . . Dr. Bigsby,
> with respect to the claimant's RFC, and has <u>afforded it great
> weight because it is consistent with the objective medical evidence
> and the opinions and records of Dr. Lacano, Dr. Mignogna, Dr.
> Baumann, and Dr. Datta who had the benefit of actually examining</u>

> the claimant.  In November 2006, Dr. Bigsby estimated that the
> claimant could lift or carry 50 pounds occasionally and 25 pounds
> frequently, stand or walk for about 6 hours in an 8-hour workday,
> and sit for about 6 hours in an 8-hour workday.

R. 22 (emphasis added).  Regarding the treatment records and opinions of Dr. Lacano and the

consultative examining physician, Dr. Mignogna, the ALJ stated the following:

> Similarly, in June 2001, Dr. Lacano found the claimant with no
> tenderness or limitations in ranges of motion of his spine and back,
> as well as with no leg edema, joint swelling, or effusion.  In May
> 2006, Dr. Mignogna also found the claimant with a decreased
> range of motion of the thoracolumbar spine, but with +5/5 motor
> strength, a normal gait and station, only mild symmetric medial
> and lateral laxity in his knees, only mild tenderness over his mid-
> to-lower spine, and no paravertebral muscle spasms.    Dr.
> Mignogna further opined that the claimant could only occasionally
> squat, climb, kneel, and crawl, and that he had no restrictions to
> lifting, carrying, sitting, standing, and walking.

R. 22.  Regarding Drs. Baumann and Datta, the ALJ stated the following:

> In May 2007, Dr. Baumann found the claimant with paraspinal
> muscle spasms and tenderness to palpitation of the cervical and
> lumbar spines, with pain radiating to his arms and legs.  However,
> in March 2007, MRI scans of the lumbar spine revealed no
> abnormality, and MRI scans of the cervical spine revealed only
> some mild disk protrusion at the right C6-C7 level, and only some
> left foraminal disease at the C3-C4 level.   In addition, in June
> 2007, Dr. Datta found the claimant with a steady gait, negative
> straight-leg raise tests, only diffuse tenderness in his neck, and at
> least 4+/5 motor strength in his bilateral upper extremities with no
> clear-cut focal deficits.

R. 22.  Based on the foregoing, the ALJ then stated that she "affords great weight to the opinion

expressed by . . . Dr. Bigsby, and finds that the claimant can perform medium work, with

restrictions." R. 23.

The ALJ made the following findings regarding Galino's subjective symptoms:

> Thus, after considering the evidence of record, the undersigned finds that there is no reasonable medical basis for the intensity, persistence, and limiting effects of the claimant's alleged symptoms, as they are not supported by the objective medical records.
>
> . . .
>
> Thus, while it is reasonable to conclude that the claimant has had some limitations, the evidence as a whole does not substantiate any cause for such debilitating limitations as described by the claimant that would have precluded all work activity.

R. 21.

Galino requested review of the ALJ's decision before the Appeals Council, submitting new evidence consisting of Dr. Faiaz M. Rasul's treatment notes from October 19, 2005 through September 12, 2007. R. 552, 560-605. On December 10, 2007, the Appeals Council denied review, stating that it "found no reason . . . to review the [ALJ's] decision." R. 7. In its denial of review, the Appeals Council stated that it "<u>considered</u> the reasons you disagree with the decision and the <u>additional evidence</u> listed on the enclosed Order of the Appeals Council," but it "found that <u>this information does not provide a basis for changing the [ALJ's] decision</u>." R. 7-8 (emphasis added). On February 4, 2008, Galino timely filed a appeal in the district court. Doc. No. 1. On June 13, 2008, Galino filed a memorandum in support of his position on appeal.

Doc. No. 10.[2]  On August 18, 2008, the Commissioner filed a memorandum in support of the Commissioner's final determination.  Doc. No. 12.  The appeal is now ripe for review.[3]

## II.     THE PARTIES' POSITIONS

Galino assigns six errors to the Commissioner's decision: (1) the Appeals Council committed error by failing to consider new evidence, namely the October 19, 2005 through September 12, 2007, treatment notes of Galino's primary treating physician, Dr. Rasul, which were submitted for the first time to the Appeals Council; (2) given the treatment records of Dr. Rasul, the final decision of the Commissioner is not supported by substantial evidence; (3) the ALJ erred by failing to fully and fairly develop the record; (4) the ALJ erred by failing to give controlling weight to the RFC opinions of Drs. Rasul and Baumann; (5) the ALJ erred by selectively reading the record, specifically by selectively reading the evaluations and treatment notes of Drs. Baumann and Datta; and (6) the ALJ committed reversible error by misstating the VE's testimony because the VE actually testified that there are no occupations that Galino can perform.  Doc. No. 10.

The Commissioner argues that substantial evidence supports his decision to deny Galino his claims for disability benefits and SSI.  He maintains that: (1) the record on the whole contains substantial evidence to support the Appeals Council's decision to deny review and Galino

_____

[2] In the Scheduling Order, the parties were directed to provide the Court "with pinpoint citations . . . to the administrative record."  Doc. No. 6.  In his memorandum, other than citing to the ALJ's decision and the testimony of the VE, Galino fails make a single citation to the administrative record.  Doc. No. 10.  Counsel for Galino is admonished for failing to follow the Court's order.

[3] Pursuant to the Scheduling Order, the Court dispenses with oral argument as unnecessary.  Doc. No. 6.

"makes no specific argument as to how this new evidence from Dr. Rasul . . . alters the substantial evidence in the record supporting the ALJ's decision other than to show that Dr. Rasul was a treating physician"; (2) the ALJ did not fail to fully and fairly develop the record because Galino was responsible for producing evidence to support his claim and, because the additional evidence was placed in the record at the Appeals Council level, the evidence was in the record; (3) good cause existed to afford little weight to the opinions of Drs. Rasul and Baumann because their RFC's were inconsistent with the other evidence of record, including Dr. Baumann's own treatment notes; (4) the ALJ is not required to rigidly refer to every piece of evidence in the decision, the ALJ sufficiently detailed the medical evidence, and substantial evidence in the record on the whole supports the ALJ's decision; and (5) the VE testified that someone with the limitations contained within Galino's RFC could perform light work. Doc. No. 12.[4]

III.   **MEDICAL HISTORY**

The record on appeal contains the following pertinent medical history:

---

[4] In his memorandum, Galino does not challenge the ALJ's credibility determination. *See* Doc. No. 10. Therefore, the Court will not review that issue. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (issues not raised in the district court are waived on appeal). Galino also does not challenge the ALJ's findings regarding his mental health impairments. Therefore, although the Court has reviewed the entire medical record, the medical history below will be limited to the relevant medical history for this appeal, specifically as it relates to whether good cause existed to afford little weight to the opinions of Drs. Baumann and Rasul, and whether the ALJ's decision is supported by substantial evidence given the submission of Dr. Rasul's treatment notes to the Appeals Council. *Id*

**A.      Treating Physicians**

**1.      2001 through 2007 - Emergency Room Visits**

Galino presented to the emergency room on numerous occasions throughout the relevant time period.[5]   On each presentation to the emergency room, Galino complained of multiple severe symptoms, including acute chest, abdominal, and/or back pain.  *Id*.  Each time, laboratory tests, EKGs, x-rays, evaluations, and observations resulted in largely unremarkable findings, except that on March 21, 2004, a CT scan of the abdomen revealed a small hiatal hernia, fatty infiltration of the liver, and a small left renal cyst.  R. 265.      *Id*.  Each time, Galino was discharged on the same or following day.  *Id*. On September 21, 2006, Galino presented to the emergency room at Parrish Medical Center complaining of back pain.  R. 402-16.   Galino reported that he was visiting a friend when his legs gave out because the back pain was too intense to stand.  R. 408.  Galino refused pain medication.  R. 410.  An MRI of Galino's lumbar spine was taken showing no evidence of any significant scoliosis, no fracture, no osseous pathology, no spondylolisthesis, normal facet joint alignment, unremarkable soft tissues, no abdominal vascular calcification, and "no evidence of any pathology."  R. 416.   The conclusion was an unremarkable lumbar spine.  R. 416 ("emphasis added").

**2.      June 2001 – December 2001 - Dr. Lacano**

On June 20, 2001, Galino was referred to Dr. Abelardo V. Lacano by another doctor for a

---

[5]R. 189-203; *see also* 247 (summary showing Galino presented to the emergency room at Wuesthoff Hospital for chest, abdominal, and/or back pain on March 21, 2004; July 14, 2004; January 4, 2005; November 2, 2005; May 24, 2006; May 31, 2006; June 2, 2006; and November 7, 2006); 248-59; 344-52; 354-70; and 402-416.

GI evaluation. R. 505. Galino reported that for the past eight years he had experienced episodes of chest pain, but cardiac workups were negative. R. 505. Galino stated he had a history of ulcers in the esophagus and stomach, for which he was taking Prilosec. R. 505. Galino stated that he recently developed abdominal pains, gaseousness, and diarrhea, which he has been treating with Pepcid and Imodium with little side effects. R. 505. Simple foods cause him stomach pain and diarrhea. R. 505. Upon physical exam, Galino was in no acute distress; his abdomen was non-tender; no masses were present; no hernias; and "[n]o stigmata of liver disease." R. 506. Upon examination of the spine and back, Dr. Lacano discovered no tenderness in the spine and no limitations in Galino's range of motion. R. 506. Dr. Lacano diagnosed Galino with abdominal pain (etiology to be determined), dyspepsia, and probable anxiety reaction. R. 506. Dr. Lacano prescribed Nexium and recommended relaxation exercises and to "avoid worrying too much." R. 506.

On August 2, 2001, Galino called Dr. Lacano stating that his children were experiencing many of the same GI symptoms, but their conditions improved after their pediatrician prescribed antibiotics. R. 502. Dr. Lacano prescribed antibiotics for Galino. R. 502. On August 6, 2001, Galino called to report that after taking the antibiotics he developed a rash and had trouble breathing. R. 501. Dr. Lacano discontinued the particular antibiotic. R. 201.

### 3. February 19, 2002 - Lab Results Normal

On February 19, 2002, comprehensive laboratory results, ordered by Dr. John G. Cary,

"were all found to be within normal limits." R. 204-06.

4.   **March 28, 2002 - Dr. Cohen**

On March 28, 2002, Galino presented to Dr. Leon A. Cohen with "a plethora of complaints, none of which seem to be related to each other." R. 217-18. Galino's bowel sounds were normal; liver and spleen were not enlarged; right upper quadrant tenderness present with palpitation; some perilumbilical tenderness, primarily superior to umbilicus; no hernias noted; no blood in stool; prostrate was normal; range of motion normal with the exception of both knees; limited flexion and extension; no weakness of any extremity; strength is 5/5 in all extremities; judgment and insight were poor; and mood was very anxious. R. 218. EKG showed normal sinus rhythm; chest x-ray was abnormal showing mild elevation of the right hemi-diaphragm and somewhat of an unusual configuration in the inferior portion of the mediastinum. R. 217. Dr. Cohen noted that Galino reported a heart attack in May of 2001, but after reviewing those records, Dr. Cohen noted no abnormalities. R. 217. Dr. Cohen noted that Galino's bowel irregularity was "likely related to stress." R. 217. Galino has a history of peptic ulcer disease without active bleeding from 1995. R. 217. "Long history of dizziness and fainting with random occurrences apparently since childhood, never worked up." R. 217. Galino stated that he has a history of heart palpitations, but Dr. Cohen noted that "[h]is records do not indicate that this has ever been documented." R. 217. Dr. Cohen recommended that Galino continue taking Nexium, Cozaar, and added Paxil. R. 217. The record does not contain any further records from Dr.

Cohen.

### 5. April 16, 2002 - Dr. Clendepin

The record contains a single entry from Dr. Clendepin.  R. 216.  On April 16, 2002, Galino presented complaining of multiple medical problems. R. 216. Galino reported that he had been suffering from Gastroesophageal Reflux Disease ("GERD") for over a year, but Nexium helps.  R. 216.  "He has had chest pain nearly everyday for the past 14 months to the point that it is debilitating."  R. 216.  Galino's left knee had been hurting for over six months.  Galino reported that he had been unable to follow up on this condition due to a lack of medical insurance.  R. 216.  Galino reported that he suffers from diarrhea everyday. R. 216. Dr. Clendepin's evaluation found a regular heart rate with no murmur.  R. 216. Dr. Clendepin's opinion states the following:

> The patient has an exaggerated pain response to palpitation and percussion.  He has diffuse abdominal tenderness with no guarding or rebounding. . . . He has full active range of motion.  There is no laxity and has an exaggerated response when examining the knee.  There is no joint redness or swelling.  The join is stable.

R. 216.  The record does not contain any other records from Dr. Clendepin.

### 6. December 16, 2002 through July 8, 2004 - Dr. Canada

On July 8, 2004, Dr. Canada's notes indicate that Galino had a full range of symmetrical motion in his back and extremities.  R. 510.  Galino also had full strength in all extremities.  R. 510.  Dr. Canada's notes further reveal that Galino's hypertension and abdominal pain were

controlled.  R. 510.

**7.      October 19, 2005 – September 12, 2007 - Dr. Rasul – (New Evidence)**

On October 19, 2005, Galino presented for the first time to Dr. Faiaz Rasul complaining of headache, vision problems, difficulty breathing, chest pain, palpitations, abdominal pain, heart burn, difficulty sleeping, back pain, knee pain, and weakness/numbness.  R. 560-61.  Galino's straight leg test was positive at 35 degrees in both legs.  R. 560.  Dr. Rasul's initial assessment was osteoarthritis, hyperlipidemia, hepatitis, and lumbar radiculopathy.  R. 560.  Dr. Rasul's treatment plan called for laboratory testing and pain medication, specifically hydrocodone.  R. 560.

On November 21, 2005, Galino returned for a follow-up regarding the results of the lab work.  R. 564.  According to Dr. Rasul's notes, the lab work was unremarkable.  R. 564.  Galino reported that this high blood pressure had improved.  R. 564. Straight leg testing was positive at 70 degrees in both legs.  R. 564.  Dr. Rasul continued Galino on hydrocodone.  R. 564.

On January 10, 2006, Galino presented to Dr. Rasul complaining of upper and lower back pain, and stating that he did not want to take too many hydrocodone.  R. 565.  Physical examination revealed tenderness on palpitation of his thorac spine.  R. 565. Dr. Rasul's assessment was upper backache, and he recommended Galino continue on the hydrocodone and have an MRI of the spine.  R. 565.

On March 23, 2006, Galino presented complaining of coughing, vomiting,

14

lightheadedness, and neck and back pain. R. 566. Dr. Rasul's notes appear to indicate that Galino recently had the flu. R. 566. Regarding his back pain, a straight leg test was positive at 50 degrees. R. 566. Dr. Rasul continued to recommend hydrocodone. R. 566. On May 17, 2006, Galino presented to Dr. Rasul complaining of back pain and wanting to renew his medication. R. 567. Dr. Rasul's treatment notes indicate no positive straight leg testing, and describe the visit as "unremarkable." R. 567.

On August 3, 2006, Galino presented to Dr. Rasul for a prescription refill and muscle spasms with pain radiating into his left leg. R. 568. Galino also reported fatigue. R. 568. Dr. Rasul's physical exam indicated that all systems were normal and unremarkable. R. 568. Dr. Rasul recommended continuing hydrocodone and ordered laboratory testing. R. 568.

On March 21, 2007, Galino presented to Dr. Rasul for a follow-up complaining of stomach problems. R. 581. Galino reported having recently been in the emergency room for abdominal and chest pain. R. 581. Dr. Rasul's notes show that the rest of Galino's systems were unremarkable. R. 581. Upon physical examination, Galino's extremities and neurological systems were normal, but tenderness was present in the abdomen. R. 581. Dr. Rasul's notes also reflect that Galino was now taking oxycodone. R. 581.

On April 5, 2007, Galino presented to Dr. Rasul with back pain. R. 582. Dr. Rasul's treatment notes indicate that oxycodone was not helping. R. 582. Straight leg testing was positive at 30 degrees. R. 582. Dr. Rasul's assessment was cervicalgia and chronic back pain.

R. 582.  On April 24, 2007, Galino presented for a follow up of MRI studies.  R. 580. Physical exam showed normal extremity and neurological systems, including normal straight leg raising.  R. 580.

On May 23, 2007, Galino appeared for prescription refill.  R. 583.  Physical examination revealed positive straight leg testing at 35 degrees.  R. 583.  Otherwise, all systems were normal.  R. 583.  Dr. Rasul recommended another MRI of the lumbar spine.  R. 583.

On July 27, 2007, Galino presented with all systems normal except for positive straight leg testing at 30 degrees.  R. 588.  Dr. Rasul's assessment was chronic lower back pain, cervicalgia, and GERD.  R. 588.  Nexium and Hydrocodone were continued.  R. 588.  On September 12, 2007, Galino presented complaining of numbness in both arms and feet.  R. 587.  Dr. Rasul notes that an MRI of the lumbar spine was unremarkable, but a spur was present on the cervical spine.  R. 587.  Upon physical exam, all of Galino's systems were normal except for his abdomen which had mild tenderness.  R. 587.  Dr. Rasul's assessment was chronic low back pain, chronic cervicalgia, and bilateral nonspecific sensory neuropathy of both forearms.  R. 587.

**8.    <u>October 12, 2006 Through Present - Dr. Baumann</u>**

On October 12, 2006, Galino presented to Dr. Patricia Baumannn, on referral from Dr. Rasul, complaining of low back pain.  R. 497-99.  Galino reported that he began experiencing pain in his lower back one year prior, and the pain radiates into his calves.  R. 497.  Galino reported having been to the emergency room three times in the past month for low back pain.  R.

497. Galino stated that he is also suffering bladder problems, but denies any bowel problems. R. 497. Groin pain complaints were also present. R. 497. The pain is worse when his stands or sits, but improves with lying down. R. 497. Galino reported that he was currently taking Lortabs for the pain. R. 497. Upon physical examination of the lower back, Dr. Baumann reported the following findings:

> Patient has tenderness with forward flexion, extension, sidebending of his lumbar spine [in] standing position. He has tenderness to palpitation and paraspinal muscle spasm in the low back. In a seated position deep tendon reflexes are one out of four bilateral patellar and Achilles. His great toe strength is five out of five. Quad strength is [5/5]. In seated position, the patient has tripod sign – he extends his back as you straighten his knee. In a supine position, the patient has a negative Faberes test. He has a negative straight leg raise. . . . He has tenderness to palpitation in the SI joints. Standing the patient is able to stand on his [toes] as well as his heels, however, when he ambulates down the hallway he walks with antalgic gait.

R. 498. Dr. Baumann reviewed the September 21, 2006 x-rays of Galino's lumbar spine and noted that there is some straightening of the lumbar lordosis as well as decreased space between the L5-S1. R. 498. Dr. Baumann provided Galino with samples of Skelaxin and a prescription for Elavil. R. 498. Dr. Baumann recommended a back exercise program and an MRI of the lumbar spine. R. 498. Dr. Baumann stated that "if he really is having urinary symptomatology he needs to see [Dr. Rasul]." R. 498.

On December 7, 2006, Galino presented to Dr. Baumann, reporting that he was unable to procure an MRI of the lumbar spine due to lack of funds. R. 493. Galino stated that the

Skelaxin made him sick, and his low back pain continues, but he feels better when lying down. R. 493. Galino continued to have tenderness to palpitation and paraspinal muscle spasms. R. 493. Dr. Baumann gave Galino one prescription for oxycodone and scheduled an MRI. R. 493.

On April 4, 2007, Galino presented for a follow-up with Dr. Baumannn regarding his MRI results. R. 488. Galino stated that his back had not improved. R. 488. Dr. Baumannn reported that his lumbar spine was unremarkable, but he did have a spur on the C3-C4, along with another spur and HNP at the C6-C7. R. 488. Dr. Baumannn's notes indicate that she referred Galino to another doctor for evaluation of the cervical spine. R. 488.

**9.** **March 26, 2007 – MRI**

On March 26, 2007, Galino had an MRI of the lumbar and cervical spine. The results of the MRI showed an "unremarkable" lumbar spine, but a mild posterior osteophytic spurring of the C5-C6, and a prominent disc protrusion to the right coupled with a spur and a right foramina narrowing of the C6-C7. R. 489-91.

**10.** **June 24, 2007 – Dr. Datta**

On June 4, 2007, Galino presented to Dr. Devin Datta complaining of: neck and bilateral upper extremity numbness and tingling, thoracle and lumbar pain and bilateral lower extremity numbness and tingling. R. 542-43. Galino reported that he was currently taking Endocet for pain, but the medication does not allow him to function at a reasonable level. R. 542. Dr. Datta's physical examination is as follows:

18

He walks with a steady gait. He has a significant amount of pain on examination. He can rise on his toes and heels without assistance but did take a good degree of time and effort to do so. He has at least 4+/5 strength in both upper extremities without any clear-cut focal deficits. Reflexes are 2/4 biceps, triceps, brachioradialis and patellar, and diminished at the Achilles. Straight leg raising with distraction is negative. . . . On examination of his neck, he has diffuse tenderness not in any one particular area. Even just barely touching the skin seems to cause severe pain. The same thing is noted in the low back where he has some tender nodules on both sides of his back where he seems to have a significant degree of discomfort, but once again even just barely touching the skin seems to cause significant pain.

R. 542. Dr. Datta reviewed the March 26, 2007, MRI and noted that it was essentially normal for the lumbar spine. The MRI of the cervical spine "shows only some mild disk protrusion on the right at C6-C7 and some left foraminal disease at the C3-C4 but otherwise normal." R. 543. "This disk at C6-C7 could cause some neck and right arm symptoms but really there is no explanation for his multiple unusual symptoms." R. 543.

Dr. Datta's impressions were generalized pain in the neck, bilateral upper extremities, back and bilateral lower extremities; right C6-C7 disk herniation; and possible fibromyalgia. R. 543. Dr. Datta's treatment plan states the following:

We had a very long discussion. We talked about the findings on the x-rays and MRI scan and talked about treatment options. I do not think anything surgical is likely to give him any significant functional improvements, <u>even the C6-C7 disk which is the only significant objective findings that he has</u>. There is nothing at this level that would explain such severe generalized symptoms. We talked about other causes for pain like this, such as fibromyalgia, low pain tolerance issues, and other more unusual neuropathic

conditions.  He is in an unfortunate situation and cannot afford to seek therapy and rehabilitation as well as additional evaluation by neurology i.e., EMG studies and also pain management as well as rheumatology to rule out all the negative consequences.  I have given him reassurance that even though he is in pain, progressing with his activity level and strengthening his upper and lower extremities is a good thing and it is not unlikely to cause him any significant harm.    There is always the risk of a large disk herniation but I think his risk is no greater than mine. . . .

R. 543.

B.    **Disability Related Opinions**

1.    **March 31, 2006 – Dr. Mignogna** [6]

On March 31, 2006, Galino presented to Dr. Joseph J. Mignogna for a consultative physical examination.  R. 371-375.    Dr. Mignogna had the benefit for reviewing a prior consultative examination conducted by him on July 14, 2004, and hospital notes from January 2005.  R. 371.[7]  Dr. Mignogna was consulted based on Galino's application which stated he was disabled due to an enlarged aorta, high blood pressure, liver disease/pancreatitis, and memory loss. R. 372.    Galino's history was largely self-reported.  Galino stated an MRI done in 2000 showed an enlarged aorta. R. 372.  Galino stated that he was diagnosed with high blood pressure in 1998; he was taking medication for it until four months ago when he stopped the medication on his own; he has been hospitalized many times for hypertension; complains of anterior chest pain radiating to the left arm with fingertip numbness; pain occurs on a daily basis; he does not

---

[6] March 31, 2006, is also the date Galino was last insured for disability benefits.  *See* supra p. 2.
[7] The record does not contain a July 14, 2004 consultative examination of Galino by Dr. Mignogna.

recall any prior EKG studies. R. 372. Galino stated an MRI of the abdomen showed liver disease, pancreatitis, and a hiatal hernia; he denies any positive tests for hepatitis. R. 372. Galino reported that he is able to: dress himself; take care of personal hygiene; do household cleaning; grocery shop; do laundry; eat; cook; drive occasionally; watch television; and read. R. 372. Galino asserted that he is unable to: manage his own money; pay bills; and use a computer. R. 372. Galino appeared to be in no acute distress. R. 373. "He was deemed to be a poor historian." R. 373.

Upon physical examination, Galino's abdomen was non-tender with no bruits or masses; Romberg test was normal; reflexes were normal; fine manipulations were normal; motor strength was 5/5; stance and posture were normal; squat was normal, but he used the table to assist in rising; toe and heel stand were normal; straight leg testing was negative; coordination were normal; he did not require an assistive device; no paravertebral muscle spasms; no scoliosis; mild tenderness in the mid to low spine; he had a full range of motion in both the C-spine and L-spine; full flexion of the thoracolumbar spine; and some tenderness in the knees, but not swelling or effusions. R. 374-75. Overall, the exam was unremarkable. R. 375.

Dr. Mignogna opined that Galino has no restrictions in standing/walking/sitting; he does not require an assistive device; no restrictions in lifting/carrying; no restrictions in manipulative functions; and no environmental restrictions. R. 375. Dr. Mignogna opined that Galino would have occasional restrictions in squatting, climbing, kneeling, and crawling. R. 375.

2.      **November 17, 2006 – RFC Assessment – Dr. Bigsby**

On November 17, 2006, a non-examining state agency consultant, Dr. Glenn Bigsby, completed a Physical Residual Functional Capacity Assessment ("RFC") of Galino. R. 431-38. Dr. Bigsby made a primary diagnosis of GERD and a secondary diagnosis of chronic back pain. R. 431. Dr. Bigsby opined that Galino's conditions and symptoms resulted in the following exertional limitations: (1) occasionally lifting and/or carrying a maximum fifty pounds; (2) frequently lifting and/or carrying a maximum of twenty-five pounds; (3) standing and/or walking about six hours in an eight hour workday; (4) sitting with normal breaks for about six hours in an eight hour workday; and (5) no limitations in pushing and/or pulling. R. 432. Dr. Bigsby stated the following regarding the evidence from which he based his opinion:

> Clmt alleges heart, liver and pancreatitis. Clmt admitted 5/01 for CP. Workup was negative for MI, CP stopped in ER, and clmt signed out. . . . 3/04 CP and abdominal pain workup showed normal abdominal CT and normal CXR. EKG showed tachycardia but otherwise normal. 1/05 workup for CP showed CXR and EKG normal; it was thought this pain was GI related. 5/06 ER for back pain showed [full range of motion] of extremities with independent ambulation. Pain resolved in ER. 5/06 exam showed clmt admitting he was capable of most routine [activities of daily living]. Lungs clear. Neuro intact. Motor and strength 5/5. Gait normal. Mild low back pain was present. 9/06 clmt was seen in ER for low back pain. PE was essentially normal with the exception of back pain. L spin xray negative for disease. 10/06 clmt evaluated for back pain. [Straight leg test] said to be positive at 80. Paraspinal muscle tenderness was present.

R. 432-33. Dr. Bigsby opined that Galino had no postural, manipulative, visual, communicative, or environmental limitations. R. 433-35. Regarding the severity of Galino's symptoms, Dr. Bigsby stated that his pain is well documented, but his ability to do activities of daily living remained intact. R. 436. Dr. Bigsby maintained that he had reviewed treating or examining source statements in the record and that his conclusions were not significantly different. R. 437.

### 3.   May 1, 2007 – RFC Questionnaire – Dr.  Baumannn

On May 1, 2007, Dr. Baumannn completed an RFC Questionnaire of Galino, whom she reported having treated since October of 2006 to present. R. 484.[8] Dr. Baumannn diagnosed Galino with a herniated nucleus pulposus ("HNP") of the cervical spine and a low back sprain or strain. R. 484. Dr. Baumannn states that Galino needs to be referred to a neurosurgeon. R. 484-85. Dr. Baumannn described Galino's symptoms as neck pain radiating into the arms worsening over the past year, low back pain radiating into the legs worsening in the past year, and decreased range of motion. R. 484. Dr. Baumannn stated that Galino has had paraspinal muscle spasms and tenderness to palpitation of the cervical and lumbar spine. R. 484. Dr. Baumannn reported that the only treatment Galino is receiving is hydrocodone. R. 484. Dr. Baumannn opined that Galino is not a malingerer. R. 485. Dr. Baumannn stated that Galino experiences pain frequently, and is "incapable of even low stress jobs" due to HNP and the need to have a referral to a neurosurgeon. R. 485. Dr. Baumannn asserted that Galino is not capable of walking

---

[8] Galino's date last insured was March 31, 2006, prior to his first treatment with Dr. Baumann. *See* supra p. 2.

more than one city block without rest or severe pain. R. 485. Galino can sit for ten minutes at a time without needing to get up; he can stand for fifteen minutes at a time without needing to sit down; and he can sit/stand/walk about two hours total in an eight hour workday. R. 485-86. Galino will need a job that allows him to shift positions at will from sitting, standing, and/or walking. R. 486. However, while standing or walking, Galino does not require an assistive device. R. 486. Galino can never lift and/or carry 50 pounds; can rarely lift 20 pounds; and can occasionally lift 10 pounds or less. R. 486. Galino can never climb stairs, ladders, or crouch. R. 487. He can rarely stoop, and only occasionally twist. R. 487. Dr. Baumannn opines that Galino has significant limitations in performing repetitive reaching, handling, or fingering. R. 487. He can grasp objects, perform fine finger manipulations, and reach his arms overhead only ten percent of the time during an eight hour workday. R. 487. Galino's condition will cause him to experience good days and bad days. R. 487. Dr. Baumannn concludes that Galino's condition will require him to miss more than four days a month from work. R. 487.

### 4. July 2, 2007 – RFC Questionnaire – Dr. Rasul

On July 2, 2007, Dr. Faiaz M. Rasul completed an RFC Questionnaire of Galino, whom he reported having treated since October of 2005 to present. R. 545.[9] Dr. Rasul diagnosed Galino with chronic cervicalgia and lower back pain. R. 545. Dr. Rasul described Galino's symptoms as dull and throbbing lower back pain and neck pain which is aggravated by walking.

---

[9] On the RFC, though prompted, Dr. Rasul does not otherwise state the length or frequency of his treatment with Galino. R. 545.

R. 545. Dr. Rasul stated that the objective and clinical signs of Galino's impairment is a straight leg test at 35 degrees. R. 545. Dr. Rasul maintained that Galino experiences side effects of nausea, stomach pains, and drowsiness from pain medication. R. 545. Though prompted by the form, Dr. Rasul did not opine whether Galino is a malingerer. R. 546. Dr. Rasul asserted that emotional factors do not contribute to Galino's symptoms or functional limitations. R. 546. Dr. Rasul opined that Galino is constantly in pain and is incapable of even low stress jobs. R. 546. Though prompted, Dr. Rasul did not explain the reasons for his conclusions that Galino is incapable of low stress jobs. R. 546. Though prompted, Dr. Rasul did not opine as to how many city blocks Galino could walk without rest or severe pain. R. 546. Dr. Rasul opined that Galino can sit for ten minutes at a time without needing to get up; he can stand for five minutes at a time without needing to sit down; and he can sit/stand/walk less than two hours total in an eight hour workday. R. 546-47. Galino will need to have his legs elevated at all times during a sedentary job. R. 547. Galino can rarely lift and/or carry less than 10 pounds. R. 547. Galino can never twist, stoop, crouch, climb stairs, or climb ladders. R. 548. However, Dr. Rasul opines that Galino can grasp objects and use fine finger manipulation 100% of the time and he can reach his arms over his head 75% of the time during an eight hour workday. R. 548. According to Dr. Rasul, Galino's impairments are unlikely to cause good days and bad days. R. 548. Dr. Rasul concludes that Galino's condition will require him to miss more than four days a month from work. R. 548.

## IV.    LEGAL STANDARDS

### A.    THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§ 404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§

404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.

If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments. In making this finding, the ALJ must also consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull. *See* 20 C.F.R. § 404.1545(b). The

claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the claimant has the RFC to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience. In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward

with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

## B. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord, Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord,*

*Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord*, *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089-92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord*, *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[10] In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

---

[10] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: 1) that there is new, non-cumulative evidence; 2) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level. *See Jackson*, 99 F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994). A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095.[11]

## V.     ANALYSIS OF ALLEGED ERRORS

### A.     Whether the Appeals Council Erred By Failing to Consider New Evidence.

As set forth above, after the ALJ issued her decision, the Appeals Council received new evidence consisting of the treatment records of Dr. Rasul. R. 7-8, 560-605. The Appeals Council subsequently denied review of the ALJ's decision. R. 7-8. Galino argues that the Appeals Council erred as a matter of law because it denied review without considering the new evidence. Doc. No. 10.[12] Galino's argument is factually inaccurate and without merit. As set forth above, in its decision denying review of the ALJ's determination, the Appeals Council

---

[11] With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Id.* The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. *Id.*

[12] For this alleged error of law, Galino requests either: (1) a remand for an award of benefits; or (2) the opportunity to be heard by the district court on appeal. Doc. No. 10 at 14.

specifically stated that it had received additional evidence and considered it, but "found that this information does not provide a basis for changing the ALJ's decision." R. 7-8. Thus, the Appeals Council clearly considered the new evidence, but found it would not alter the ALJ's prior decision.

**B.      Whether the Final Decision is Supported By Substantial Evidence.**

Galino argues that with the inclusion of Dr. Rasul's treatment records, the final decision of the Commissioner is not supported by substantial evidence. Doc. No. 10.[13] Pursuant to *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262-66 (11th Cir. 2007), when new evidence is introduced for the first time to the Appeals Council, a district court will review whether the decision to deny benefits is supported by substantial evidence in the record as a whole, including the new evidence added to the record after the ALJ's decision. *Hummel v. Astrue*, Case No. 8:06-cv-725-T-EAJ, 2007 WL 2492460 at *7 (M.D. Fla. Aug. 2007). As set forth above, substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d

---

[13] For this alleged error, Galino argues that the new evidence shows that the ALJ's decision to afford little weight to Dr. Rasul's July 2, 2007 RFC was not supported by substantial evidence (R. 545-48). Doc. No. 10 at 15-16. In the same section, Galino states without subsequent citation to any authority: "The Appeals Council had the complete record to review, failed to review it, and denied benefits stating that 'We found no reason under our rules to review the [ALJ's] decision.' No reasoning was provided, therefore, reversal is mandated." Doc. No. 10 at 16. Because the section is entitled "Supported by Substantial Evidence" it appears that Galino is arguing that the final decision of Commissioner is not supported by substantial evidence in the record as a whole. *Id.* at 15; *see also Hummel v. Astrue*, Case No. 8:06-cv-725-T-EAJ, 2007 WL 2492460 at * 7 (M.D. Fla. Aug. 30, 2007) (holding that when the Appeals Council is presented with new evidence and decides not to review the ALJ's decisions, the court reviews whether substantial evidence supported the Commissioner's decision based on the record as a whole).

1553, 1560 (11th Cir. 1995).

The Court has reviewed the entire record, including all the treatment notes from Dr. Rasul, and concludes that substantial evidence supports the ALJ's decision. Every emergency room visit resulted in patently unremarkable findings. R. 183-203, 247-59, 344-52, 354-70, 402-416. Laboratory findings, x-rays, EKGs, and MRI's of the lumbar and cervical spine have all been largely unremarkable except for a herniation at the C6-C7 with a spur and a spur on the C5-C6. R. 200, 204-06, 265, 416, 489-91. Drs. Lacano, Cohen, Clendepin, and Canada's treatment notes do not reflect any specific debilitating pathology. R. 216-18, 501-05, 510. As will be explained in further detail below, the treatment records of Drs. Baumannn and Rasul also fail to show a specific debilitating pathology. R. 484-497, 560-588. The evaluations of Drs. Datta and Mignogna also indicate that while Galino does suffer from severe impairments, those impairments are not debilitating. R. 371-375, 542-43. The Court has considered the entire medical record, including Dr. Rasul's treatment records and the ALJ's credibility finding which Galino has not challenged on appeal, and finds that substantial evidence supports the Commissioner's decision to deny Galino's application.[14]

### C.   Whether the ALJ Erred By Failing to Develop the Record.

Galino argues that the ALJ failed to fully and fairly develop the record because Dr.

_____

[14] Even if this Court would have reached a contrary result as a finder of fact, and even if this Court found that the evidence preponderates against the Commissioner's decision, the Court must affirm because substantial evidence exists in the record as a whole to support the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

Rasul's treatment records were not available at the time of the hearing. Doc. No. 10.[15] The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, because a hearing before an ALJ is non-adversarial, the ALJ retains the basic duty to fully and fairly develop the record even when a claimant is represented by counsel. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985); *see also Rease v. Barnhart*, 422 F.Supp.2d 1334, 1372 (N.D. Ga. 2006) (describing the relationship between the claimant's burden and the ALJ's duty). In present case, Galino's argument is moot. Assuming Galino is correct that the ALJ failed to fulfill her duty by not locating and introducing Dr. Rasul's treating records prior to the hearing, those records were subsequently made part of the record at the Appeals Council level. R. 7-8. Dr. Raul's records were considered by the Appeals Council and considered by this Court on appeal. As stated above, even with the inclusion of Dr. Rasul's records, substantial evidence supports the Commissioner's decision to deny Galino's application. Therefore, because Galino has not been harmed or prejudiced in any way, the Court finds that the ALJ did not fail to fulfill her duty to develop a full and fair record.

### D.      Whether the ALJ Erred By Discounting Opinions of Treating Physicians.

Galino argues that the ALJ should have given controlling weight to the opinions of Drs.

---

[15] Galino cites *Sims v. Apfel*, 530 U.S. 103 (2000) for the general proposition that an ALJ has a duty to fully and fairly develop the record. Galino fails to cite to any cases that are factually similar or analogous to the present case. Doc. No. 10 at 16-17.

Baumann and Rasul. Doc. No. 10.[16]  Galino also argues that the ALJ erred by finding that Dr. Rasul was not a treating physician. *Id*. Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential process for determining disability.  The opinions or findings of a non-examining physician are entitled to little weight when they contradict the opinions or findings of an examining physician. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  The ALJ may, however, reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).  Nonetheless, the ALJ must state with particularity the weight given different medical opinions and the reasons therefore, and the failure to do so is reversible error. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ making the necessary findings, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[17]  Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

> Good cause exists when the: "(1) treating physician's opinion was
> not bolstered by the evidence; (2) evidence supported a contrary

---

[16] Galino cites to *Johnson v. Asture*, 2008 WL 623218 at *5 (M.D. Ga. March 4, 2008) for the proposition that "[a] consultative examination is not to be given greater weight than the opinion of a treating physician."  *Id*.  However, Galino fails to reconcile that proposition with its exception, namely that "[a] treating physician's opinion may be discounted if it is not accompanied by objective medical evidence or is wholly conclusory." *Id*.

[17] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

> finding; or (3) treating physician's opinion was conclusory or
> inconsistent with the doctor's own medical records." *Phillips v.
> Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations
> omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th
> Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th
> Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005). "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269. Moreover, the opinions of a non-examining physician do not constitute substantial evidence when standing alone. *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

1.    Dr. Baumannn

In the present case the ALJ reviewed Dr. Baumannn's treatment notes and her medical source opinion. R. 20, 22. The ALJ afforded little weight to Dr. Baumannn's ultimate opinion because it was not supported by the objective medical record. R. 22. The Court agrees. The September 21, 2006 MRI of Galino's lumbar spine was unremarkable. R. 416. The March 26, 2007 MRI of Galino's lumbar and cervical spine was largely unremarkable except for a disk herniation at the C6-C7 and some spurring. R. 489-91. Moreover, Dr. Baumannn's opinion was contrary to evaluations and opinions of Dr. Datta, a non-disability related consulting physician. R. 542-43. Therefore, good cause existed to afford little weight to the ultimate opinion of Dr. Baumannn regarding Galino's functional limitations.

2.    Dr. Rasul

The ALJ inaccurately described Dr. Rasul as a non-treating physician.  R. 22.  However, a review of Dr. Rasul's medical source opinion regarding Galino's functional limitations is also contrary to the objective medical record as set forth above.  Therefore, good cause existed to afford little weight to his ultimate opinion.  Moreover, substantial evidence in the record as whole supports the Commissioner's decision to deny Galino's application. "As the Eleventh Circuit has held, a remand to have the ALJ perfect the record would serve no practical purpose where it would not alter the ALJ's findings, and would be a waste of judicial resources." *Harland v. Astrue*, 2008 WL 5137802 at *6 (M.D. Ga. Dec. 5, 2008) (citing *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981)). Given the ALJ's credibility finding, which Galino has not challenged on appeal, a remand to have the ALJ properly note that Dr. Rasul is a treating physician, where ample good cause exists in the record to discount his ultimate opinion and substantial evidence supports the decision on a whole, would be futile.

**E.    Whether the ALJ Erred By Selectively Reading Record.**

In support of his position, Galino fails to cite to any binding case law or regulatory support.  Doc. No. 10.  Galino cites *Portwood v. Commissioner*, 396 F.Supp.2d 799, 804 (E.D. Mich. 2005) in support of his argument.  Doc. No. 10.  In *Portwood*, 396 F.Supp.2d at 806-07, district court held that the ALJ erred by not providing a fair, objective, and non-selective reading

of the record. *Id.*[18]  After carefully reviewing the entire record and the ALJ's decision, the Court finds Galino's argument is without merit because, in her opinion, the ALJ provides a fair, objective, and non-selective account of the record.

### F.  Whether the ALJ Misstated the VE's Testimony.

Galino argues that the ALJ misstated the VE's testimony because the VE actually testified that there were no jobs in the national or regional economy that an individual with Galino's limitations, as stated by the ALJ, could perform.  Doc. No. 10.  Galino's argument is without merit.  At the hearing, the ALJ asked the VE two hypothetical questions: one based on Dr. Bigsby's RFC; and a second based on Dr. Baumannn's RFC.  R. 634-37.  The VE responded that an individual with the limitations described in Dr. Bigsby's RFC would be unable to perform any jobs at the medium unskilled level, but there were jobs at the light unskilled level, such as an usher or greeter, that an individual with Galino's limitations could perform.  R. 635-36.[19]  Thus, Galino's argument that the VE testified that there were no jobs that an individual with Galino's limitations could perform is misplaced.

---

[18] The principal recognized in *Portwood* is consistent with the legal requirement for an ALJ's decision to be supported by substantial evidence when the record is considered in its entirety.  *See e.g. Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[19] Regarding Dr. Baumannn's RFC, which the ALJ discounted in her decision, the VE testified that there were no jobs that an individual with those limitations could perform.  R. 636-37.

## VI.    CONCLUSION

For the reasons stated above, it is **ORDERED** that the Commissioner's decision is **AFFIRMED**.  The Clerk is directed to enter a separate judgment in favor of the Commissioner and close the case.

**DONE and ORDERED** in Orlando, Florida on March 30, 2009.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


The Court Requests that the Clerk
Mail or Deliver Copies of this Order to:

Robert Anderson
Cianfrogna, Telfer, Reda, Faherty & Anderson, P.A.
P.O. Box 6310
Titusville, Florida      32782-6310

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida           33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Nadine DeLuca Elder, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia         30303-8920

The Honorable Philemina M. Jones
Administrative Law Judge
c/o Social Security Administration
Office of Disability Adjudication and Review
Suite 300
3505 Lake Lynda Dr.
Orlando, FL 32817-9801